25 C.C.P.A.(Patents)

## In re URFER.
### Patent Appeal No. 3902.

Court of Customs and Patent Appeals.
March 7, 1938.

McConkey & Smith, of Washington, D. C. (Stephen Cerstvik, of East Orange, N. J., and N. D. Parker, Jr., of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner which rejected appellant's claims 30 to 33, inclusive (all of the claims).

Claim 30 is illustrative and reads as follows: "30. In an aircraft having a plurality of internal combustion motors, an indicator arranged so as to be visible to the pilot of the aircraft and adapted to indicate when the motors are operating in synchronism, said indicator comprising a casing, a rotatably mounted dial in said casing, a plurality of annular concentrically arranged high tension electric discharge lamps disposed in separate concentric compartments in said casing behind said dial and electrically connected to the ignition systems of said motors, respectively, except one which serves as the master motor, whereby said lamps are periodically illuminated, said dial having a plurality of apertures arranged along a diameter thereof, a transformer, a direct current circuit including the primary winding of said transformer and means operated by said master motor for periodically interrupting said circuit at a frequency corresponding to the speed of said master motor whereby an alternating current is induced in the secondary winding of said transformer having a frequency corresponding to the speed of said master motor, and a synchronous electric motor energized by the alternating current from said transformer for rotating said dial at a speed corresponding to the speed of said master motor whereby the illuminations visible through the apertures in said rotating dial appear to be stationary when all of the motors are running at the same speed."

The references relied upon are as follows:

Carr, 691,441, January 21, 1902.

Haskins, 1,748,417, February 25, 1930.

Simmons, 1,920,113, July 25, 1933.

The disclosure in the claims is well set out in the decision of the board as follows: "The invention relates to engine speed synchronizers of the stroboscopic type for multi-motored aircraft to give a visible indication of the relative speeds of the engines under observation. In the form shown in Fig. 1 the stroboscope comprises a circular casing containing two concentric neon tubes. A rotatable disk closes one side of the casing and is provided with a radial line of openings positioned in front of the tubes. The disk is rotated by a motor driven from a transformer. The primary of the transformer is connected in a circuit which includes a battery and an interrupter operated by the master motor. One neon lamp is connected to a circuit which leads to the spark plug of one of the auxiliary motors and the other neon lamp is connected to a circuit which leads to the spark plug of the other auxiliary motor. With this system the neon lamps will flash every time the spark plugs ignite the fuel. If all the motors are synchronized the spots of light appearing in the line of apertures will appear to remain stationary. If the motors are not synchronized the spots will appear to move."

The Carr patent relates to a device for determining the frequency of alternating currents and discloses a stroboscopic disk driven by an electric motor, of either the alternating or direct current type; provision is made whereby, by means of a variable rheostat, the speed of said motor, and likewise the speed of the disk, may be varied and controlled. A plurality of lamps behind the disk are connected in parallel in an alternating current circuit and are flashed at a rate proportional to some other variable, all for the purpose of synchronizing the variables.

The patent to Haskins discloses a system for testing ignition of the cylinders in an automobile and shows a synchronizing arrangement in which a neon lamp is flashed by ignition impulses of the engine, and the lamp or indicator is rotated at a speed proportional to that of the engine by means of a synchronous motor which is energized by an alternating current voltage

generator driven by one of the engine shafts.

The Simmons patent discloses a device for indicating the relative speeds of a plurality of motors in aircraft. The device of the patent is of the same general type as that of the claims, the only essential difference between them appearing to be the method of driving the stroboscopic disk. In the patent the driving of the disk is accomplished by a flexible shaft which is driven by gearing actuated by the cam shaft on the master motor.

The examiner rejected the claims as aggregational. The board, however, reversed the examiner in this ground of rejection, and held the claims to be unpatentable over the prior art, particularly the Simmons patent. Therefore, the board having reversed the examiner on the issue of aggregation, such ground of rejection is not before us.

Appellant argues that in the device of the Simmons patent the stroboscope will not give an accurate reading of the relative speeds of the motors for the reason that the means of driving the disk results in backlash. This contention of appellant may be true. But the Simmons patent clearly discloses a modification of the driving device, using a synchronous motor to drive a stroboscopic disk, as follows: "It is, of course, understood that the shaft may be driven directly from the crank shaft of the motor, or, if desired, by means of an impeller or by a synchronous electric motor. * * *"

The Simmons patent does not show any details as to how the synchronous motor is to be driven in synchronism with the engine, and appellant contends the patentee did not do so for the reason that he obviously did not know or he would have said so.

From what has been hereinbefore set out, it would seem that the issue before us is whether or not in the light of the references, particularly the patent of Simmons, it would be obvious to one skilled in the art to employ, in the device of the patent, a transformer connected to a direct current circuit, which is interrupted by the master motor, as required in the claims, if it was thought to be desirable to drive the disk by means of a synchronous motor.

It does not follow that merely because Simmons did not show the hooking up of a synchronous motor in his device he did not know how to do so. The fact that he stated it could be used, if so desired, indicates to us that it was contemplated by him, and we believe that the mechanical details necessary to accomplish the installation of a synchronous motor with a transformer would be clearly obvious to one skilled in the art.

In this connection the board reasoned as follows:

"If a synchronous motor is used and it is synchronized with the main motor as is contemplated by the patentee, it would be obvious to employ a transformer as well as a direct current circuit which is interrupted by the master motor as required by the claims. These merely recite well known electrical expedients and obviously present nothing new to an electrician. The Haskins patent also discloses the use of a synchronous motor for driving the indicating means. This synchronous motor is arranged in a synchronous generator circuit, the generator being driven in unison with the engine. This arrangement is slightly different from that called for by the claims but it shows that various modifications in electrical connections are resorted to by electricians. The variation recited by the present claims is believed too well known to involve any patentable merit. We believe, therefore, that the claims are unpatentable."

Other matters concerning this issue have been urged upon us and have been given our careful consideration; but since we are of opinion that the claims are unpatentable for the reasons herein set forth, it is unnecessary to discuss them.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.